UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
KAREN ROCHESTER, as Administratrix of
the Estate of COLLIN T. ROCHESTER,
Deceased,

               Plaintiff,                 **MEMORANDUM AND ORDER**
                                                        10-CV-6017 (PKC) (SLT)

   - against-

COUNTY OF NASSAU, MARIO
MASTROPIERRO, CHRISTOPHER M.
McCARTHY, individually and in their
official capacities, and JOHN DOE Nos. 1-
10,

               Defendants.
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Plaintiff Karen Rochester brings this action against Defendants Officer Mario Mastropierro and Officer Christopher McCarthy of the Nassau County Police Department ("NCPD"), John Doe Nos. 1-10, and the County of Nassau (the "County") (collectively, "Defendants"), alleging violations of 42 U.S.C. § 1983 and New York state law in connection with the death of Collin Rochester ("Rochester"), Plaintiff's son. Before the Court are Defendants' motions for summary judgment. For the reasons stated below, Defendants' motions are granted as to Plaintiff's federal law claims and as to all claims against the John Doe Defendants; these claims are all dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without prejudice to bring in state court.

## BACKGROUND

**I.  Relevant Facts**[1]

On October 9, 2009, Defendants Officer Mastropierro and Officer McCarthy were assigned to the NCPD's Bureau of Special Operations, the County's tactical team and anti-crime patrol. (Mastropierro's 56.1 Statement ("Mastropierro 56.1"), Dkt. 158, at ¶¶ 2–3, 10, 12.)  That night, they were patrolling together in an unmarked, black, GMC Denali (the "Unmarked SUV"), which was equipped with police lights and sirens.  (*Id.* at ¶¶ 15–16.)  According to Defendants, shortly after midnight, the officers saw, from five to ten car lengths away, a motorcycle being operated by an unknown individual—later identified as Rochester—without its headlights, parking lights, or tail lights on.  (*Id.* at ¶¶ 17–20.)  Because operating a motorcycle without lights at night is a violation of New York Vehicle and Traffic Law § 381, the officers decided to effectuate a vehicle and traffic stop.  (*Id.* at ¶¶ 24–25; *but see* Plaintiff's Response to Defendant Mastropierro's 56.1 Statement ("Pl.'s Resp. to Mastropierro 56.1"), Dkt. 163, at ¶ 25.)[2]

The officers moved to drive behind the motorcycle, although it is disputed whether they sped up to do so and how far they were from the motorcycle.  (Pl.'s Resp. to Mastropierro 56.1, at ¶ 21.)  It is also disputed whether the officers turned on their emergency lights and sirens to indicate that Rochester should pull over.  (*Id.* at ¶¶ 28–31.)  The motorcycle then turned a corner onto

---

[1] Unless otherwise noted, a standalone citation to a party's 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein.  Where relevant, however, the Court may cite directly to the underlying document.

[2] Plaintiff disputes "that the officers decided to effectuate a vehicle and traffic stop" because "[b]oth eyewitnesses DaSilva and Resende saw the Unmarked SUV without emergency lights activated at the time of the crash."  (Pl.'s Resp. to Mastropierro 56.1, at ¶ 25; *see also* (Plaintiff's Brief ("Pl.'s Br."), Dkt. 161, at 25 (arguing that by not using lights and sirens, Defendant Officers were not conducting a traffic stop).)

another street and increased its speed. (*Id.* at ¶ 30.) It is disputed whether the officers correspondingly increased their speed and whether the motorcycle left the officers' sight when it turned the corner. (*Id.* at ¶¶ 31–32, 34–37.) Soon after turning the corner, the motorcycle crashed into a civilian car. (Mastropierro 56.1, at ¶ 40.) It is disputed whether the officers witnessed the crash. (Pl.'s Resp. to Mastropierro 56.1, at ¶¶ 37–38.) According to Plaintiff, the alleged pursuit occurred over a distance of approximately 2,000 feet. (Pl.'s Br., at 1.) Officers Mastropierro and McCarthy claim that while Rochester was being transported to the hospital, the officers found a handgun on his person. (Mastropierro 56.1, at ¶¶ 63–64.) On October 16, 2009, Rochester died as a result of the injuries he sustained in the crash. (Mastropierro 56.1, at ¶ 95.)

## II. Procedural History

Plaintiff filed the instant action on December 29, 2010. (Dkt. 1.) On May 30, 2012, Judge Sterling Johnson, Jr., the then-presiding judge, denied Defendants' motion to dismiss. (Dkt. 22.) The case was transferred to this Court on April 19, 2013. (4/19/13 docket entry.) At a pre-motion conference on February 14, 2017, Plaintiff withdrew her claims for assault, false imprisonment, and intentional infliction of emotional distress, as well as her claims arising under the New York Constitution. (2/14/17 minute entry.) Defendants' motions for summary judgment as to Plaintiff's remaining claims were fully briefed on July 31, 2018. (Dkts. 150, 151, 155.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted; alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted). In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

## DISCUSSION

Defendants move for summary judgment as to Plaintiff's remaining claims asserting: (1) violations of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 ("§ 1983") (against all Defendants); (2) violations of the Fourth and Eighth Amendments pursuant to § 1983 (against all

Defendants); (3) wrongful death under New York state law (against all Defendants); (4) negligence, gross negligence, and recklessness under New York state law (against Mastropierro and McCarthy); and (5) negligent hiring, training, and supervision under New York state law (against the County).[3]

## I. Claims Against John Doe Defendants

As an initial matter, the Court *sua sponte* dismisses all federal claims against the John Doe Defendants as time-barred. Claims brought pursuant to § 1983 are subject to a three-year statute of limitations. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citing N.Y. C.P.L.R § 214(5)) (because Section 1983 does not contain a specific statute of limitations, courts apply the statute of limitations for personal injury actions under state law, which in New York is three years); *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (noting three-year statute of limitations for due process claim under § 1983). Although a defendant can initially be named as a John Doe defendant, failure to fully name that defendant within the applicable statute of limitations period requires dismissal of the claim. *Tapia–Ortiz v. Doe,* 171 F.3d 150, 151–52 (2d Cir.1999) (stating that "[i]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued"); *see also Maitland v. City of N.Y.*, No. 13-CV-2256 (NGG) (CLP), 2014 WL 1427857, at *5 (E.D.N.Y. Apr. 14, 2014) (citing *Tapia-Ortiz v. Doe*, 171 F.3d 150, 151–52

---

[3] Plaintiff also references the Fifth Amendment in her Complaint. (Complaint, Dkt. 1, at ¶¶ 1, 52.) However, as the due process protections of the Fifth Amendment apply only to the United States and not the States, the Court will analyze the Plaintiff's due process arguments under the Fourteenth Amendment. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (noting that due process claims against the States arise under the Fourteenth Amendment).

5

(2d Cir. 1999)).[4] Here, none of the John Doe 1-10 Defendants were fully named within the three-year statute of limitations.[5] Accordingly, all federal claims against the John Doe Defendants are dismissed with prejudice.

## II. Fourteenth Amendment Substantive Due Process Claim

Plaintiff alleges that Defendants Mastropierro and McCarthy violated Rochester's Fourteenth Amendment substantive due process rights when they "pursu[ed] him to his death in an Unmarked SUV with no emergency lights." (Pl.'s Br., at 15.) Even construing the facts in the light most favorable to Plaintiff, Plaintiff's substantive due process claim fails as a matter of law.

To establish a substantive due process claim, a plaintiff must show (1) a deprivation (2) of life, liberty, or property. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). A "deprivation" based on executive action occurs when such action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see id.* at 849 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). In *Lewis*, the Supreme Court held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id.* at 854. In so holding, the Court observed that, "[j]ust as a purpose to cause harm is needed for Eighth

---

[4] While a claim can survive a time bar pursuant to Fed. R. Civ. P. 15(c) or N.Y. C.P.L.R. § 1024, if it relates back to the original, timely filed complaint, *see, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 517–18 (2d Cir. 2013), here the relation-back doctrine has no application, since the John Doe Defendants were never fully named.

[5] "A cause of action generally accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (internal quotations and citation omitted). The relevant events described in Plaintiff's Complaint all occurred between October 9, 2009 and October 16, 2009. (Complaint, at ¶¶ 10, 28–42.) Therefore, Plaintiff's deadline to name the John Doe Defendants was October 2012.

Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case." *Id.*; *see also Salamacha v. Lynch*, No. 98-7204, 1998 WL 743905, at *2 (2d Cir. Sept. 25, 1998) (summary order) ("[T]he Supreme Court decided [in *Lewis*], specifically in the context of high-speed police pursuit cases, that plaintiffs must meet [a] higher standard, establishing conduct that 'shocks the conscience' of the court.").[6]

Here, there is no genuine dispute that Rochester was driving his motorcycle without its lights on, in violation of New York Vehicle and Traffic Law § 318, and that Defendants were engaged in a legitimate traffic stop when the accident occurred. *Lewis*, 523 U.S. at 836 ("[O]nly a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience. . . ."); *Harrison v. City of Corning*, No. 15-CV-6716 (CJS), 2016 WL 5871369, at *5 (W.D.N.Y. Oct. 7, 2016) ("'[E]ven a minor traffic stop, and pursuit of a fleeing suspect after an unexplained flight from that stop, is a legitimate government interest[;]' however, a pursuing officer may violate the substantive due process clause if he injures

---

[6] In her sur-reply, Plaintiff states that the Second Circuit's recent decision in *Edrei v. Maguire* stands for the principle that the Court must "analyze the officer's actions from an objective viewpoint and need not inquire into the officer's subjective motivations to find an intent to harm." (Plaintiff's Sur-Reply ("Pl.'s Sur-Reply"), Dkt. 172, at 1 (citing *Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018)).) However, this misstates the Second Circuit's holding. In *Edrei*, the panel held that the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015), "provides the appropriate [objective intent] standard for *all excessive force claims* brought under the Fourteenth Amendment." *Edrei*, 892 F.3d at 537 (emphasis added). There is no indication that this holding applies to a Fourteenth Amendment *substantive due process* claim. In fact, in *Kingsley*, the Supreme Court made it clear that the subjective intent standard articulated in *Lewis* "referred to the defendant's intent to commit the *acts* in question, not to whether the force intentionally used was 'excessive.'" *Kingsley*, 135 S. Ct. at 2475 (emphasis in original). As there is no excessive force claim in this case, the Court will apply the subjective intent standard.

The Court also rejects Plaintiff's claim that she can prevail on her due process claim by demonstrating "the intermediate level of fault of recklessness or deliberate indifference." (Pl.'s Br., at 16 (citing *Kingsley*, 135 S Ct. at 2472).) Again, Plaintiff's reliance on *Kingsley* is unavailing, as the recklessness standard was raised in the context of an excessive force claim, not a substantive due process claim.

7

the suspect with 'some intent to harm that goes beyond the traffic stop.'") (quoting *Steen v. Myers*, 486 F.3d 1017, 1023–24 (7th Cir. 2007)). In her 56.1 Statement, Plaintiff concedes that "Defendant Officers turned . . . to 'get behind' Rochester because, and only because, his motorcycle did not have its lights on." (Pl.'s Resp. to Mastropierro 56.1, at ¶ 189.)[7]

These concessions aside, Plaintiff has also presented no evidence to support a claim that the motorcycle's lights were on. Instead, she argues that a jury could still so conclude because:

> (i) Mastropierro conceded that motorcycles usually prevent the rider from turning the lights off, (ii) the Defendant Officers were able to see the motorcycle from a far distance, and (iii) by not activating their lights and sirens, a jury could disregard the Defendant Officer's testimony and conclude that the motorcycle lights were illuminated and that is why the Defendant Office[s] did not effectuate a vehicle stop using emergency lights, and (iv) the suspicious appearance of the gun provides further evidence from which the jury could conclude that the motorcycle lights were on, which is why the Defendant Officers needed to fabricate a weapon's possession charge against Rochester.

(Pl.'s Br., at 19 (citations omitted).) With respect to Plaintiff's first argument, while Mastropierro did testify at his deposition that *some* motorcycles can prevent the rider from turning the lights off, Plaintiff has presented no evidence that Rochester's motorcycle was such a motorcycle. (Defendant Mastropierro Reply Brief, Dkt. 170, at 3.) With respect to Plaintiff's second argument, Plaintiff submitted no evidence regarding the officers' ability (or lack thereof) to see Rochester from five to ten car lengths away. The remainder of Plaintiff's arguments are merely conclusory and speculative, with no factual support in the record. A party opposing summary judgment "must support vague accusation[s] and surmise with concrete particulars." *Applegate v. Top Assocs., Inc.*, 425 F.2d 92, 96 (2d Cir. 1970). Plaintiff "cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material fact, or defeat the motion

---

[7] The Court also notes that while Plaintiff devotes a portion of her opposition brief to the issue of whether the motorcycle's lights were on or off, (Pl.'s Br., at 18–19), she does not re-raise this argument in her Sur-Reply.

through mere speculation or conjecture." *Western World Insurance Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (internal citations and quotations omitted); *see also Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("There must be more than a scintilla of evidence, and more than some metaphysical doubt as to the material facts.") (citations and internal quotations omitted).

Additionally, Plaintiff has put forth no evidence that Defendant Officers had an "intent to harm [Rochester] physically or to worsen [his] legal plight." *Lewis*, 523 U.S. at 854. Plaintiff's sole argument is that Defendant Officers' alleged failure to use police lights and sirens "with no sign of police authority displayed" constituted an intent to harm and creates a triable inference that "the pursuit . . . was undertaken for no other purpose than to injure or seriously threaten Rochester with physical injury." (Pl.'s Br., at 25.) Plaintiff's brief is utterly devoid of case law to support the proposition that pursuing a suspect without lights and sirens constitutes an "intent to harm," and, as discussed below, that proposition is contradicted by the weight of the case law.

Plaintiff's reliance on the Fifth Circuit's decision in *Checki v. Webb*, 785 F.2d 534 (5th Cir. 1986)—the only case cited in support of her argument—is misplaced. In *Checki*, the plaintiff alleged that the defendants, without probable cause, pursued him in an unmarked police car for twenty miles, causing both cars to "accelerat[e] to speeds in excess of 100 M.P.H.," and then physically assaulted him. *Id.* at 535. The Fifth Circuit reversed and remanded the district court's dismissal on venue grounds and stated, *inter alia*, that

> [f]actual development in this case could lead to a jury question whether [the defendants'] car-chasing actions were inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience[.] The trier of fact will have to determine whether [the defendants] crossed the constitutional line that would make their pursuit and harassment actionable under section 1983.

*Id.* at 538 (internal quotations omitted). In this case, however, despite such factual development

9

having occurred, the record is bare as to evidence of malice, and it is undisputed that Defendant Officers had a legitimate law enforcement purpose for pulling Rochester over.

Moreover, even assuming that Mastropierro and McCarthy failed to use their lights and sirens, Plaintiff has failed to create a genuine dispute of material fact that Defendants had "more intent to harm than that inherent in the high-speed pursuit of any suspected offender." *Helseth v. Burch*, 258 F.3d 867, 872 (8th Cir. 2001) ("The only harm intended by [the defendant's] conduct was incidental to [his] legitimate objective of arresting [the plaintiff]. That intent does not, as a matter of law, establish a substantive due process violation."). And although Plaintiff "contend[s] that the accident could have been avoided had [the officers] simply turned on [their] lights and siren and pulled [Rochester] over. . . . Whether the accident could have been avoided . . . is not part of the analysis with respect to shocking the conscience." *White v. Polk Cty.*, No. 8:04-CV-1227-T-26 (EAJ), 2006 WL 1063336, at *7 (M.D. Fla. Apr. 21, 2006), *aff'd*, 207 F. App'x 977 (11th Cir. 2006); *see also Roach v. City of Frederickson,* 882 F.2d 294 (8th Cir. 1989) (finding that high speed pursuit of a minor traffic offender outside the officer's jurisdictional limits, without activation of siren in violation of state law, did not rise to level of gross negligence, much less shocking the conscience); *Cannon v. Taylor*, 782 F.2d 947 (11th Cir. 1986) (finding that a high-speed chase without activating emergency apparati in violation of state law did not violate due process); *Robinson v. Velasquez*, No. 07-CV-3645 (KAM) (LB), 2010 WL 1010733, at *7 (E.D.N.Y. Mar. 15, 2010) ("Under the circumstances, when viewed in a light most favorable to plaintiff, defendant[-officer]'s alleged ramming of plaintiff's car, failure to identify himself as a police officer, and brandishing of a gun at plaintiff during a police pursuit do not amount to the most egregious official conduct.") (internal quotations omitted); *Magdziak v. Byrd*, No. 94-C-1876, 1995 WL 704394 at *5 (N.D. Ill. Nov. 29, 1995) (holding that a high-speed chase where

state trooper failed to use oscillating lights and siren, and innocent driver of second car was fatally injured in collision with suspect being chased, was not conscience-shocking); *Smith v. Lexington Fayette Urban Cty. Gov't*, 884 F. Supp. 1086, 1094 (E.D. Ky. 1995) (finding no due process violation where the plaintiff alleged "that the police officers initiated a high-speed pursuit of a suspected DUI at close distances, in the city limits where there was vehicular and pedestrian traffic, in disregard of traffic signals, and that the police officers failed to use their emergency equipment, in violation of police department regulations, policy and law"); *cf. Krzykowski v. Town of Coeymans*, No. 06-CV-835 (GLS) (DRH), 2008 WL 5113784, at *5 (N.D.N.Y. Nov. 25, 2008) (finding no due process violation where the defendant-officer pursued the plaintiffs for two miles and there was no indication that "he hit the [plaintiffs'] bikes or their operators at any point" during the pursuit).

Therefore, the Court finds that Officers Mastropierro's and McCarthy's alleged conduct, viewed in the light most favorable to Plaintiff, fails to "shock the conscience,"[8] and Defendants' motion for summary judgment is granted as to Plaintiff's Fourteenth Amendment substantive due process claim.

### III.  Plaintiff's Fourth and Eighth Amendment Claims Are Dismissed as Abandoned

Plaintiff failed to respond to Defendants' arguments regarding her Fourth and Eighth Amendment claims, which have been brought against all Defendants. Accordingly, the Court dismisses them as abandoned. *See Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (summary order) ("Where, as here, a counseled non-moving party submits 'a partial response

---

[8] The Court, of course, is sympathetic to the tragic circumstances giving rise to Plaintiff's claim. However, § 1983 cannot be used to redress such tragedy where the conduct of the government officials or officers does not meet the high threshold of "shocking the conscience."

11

arguing that summary judgment should be denied as to some claims while not mentioning others,' that response 'may be deemed an abandonment of the unmentioned claims.'") (quoting *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014)).[9]

## IV. *Monell* Liability

Plaintiff argues that Defendant Nassau County is liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) for failing to train or supervise Officer Mastropierro and Officer McCarthy in the proper protocols for vehicle pursuits. (Pl.'s Br., at 47–52.) "Under Second Circuit case law, a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of N.Y.*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). "'*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.'" *Id.* (quoting *Segal v. City of N.Y.,* 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original)). Once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct." *Segal*, 459 F.3d at 219. In light of the Court's grant of Defendants' motion for summary judgment on Plaintiff's federal law claims against the individual Defendants, Defendants' motion for summary judgment is granted as to Plaintiff's *Monell* claim.

## V. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims

Having disposed of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims arising under New York state law. *See* 28 U.S.C. § 1367(c)(3).

---

[9] For the same reasons, even if Plaintiff's claims against the John Doe Defendants were not time-barred, they would be dismissed.

Where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (internal citation omitted); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well."). Accordingly, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismisses them without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons stated, Defendants' motions for summary judgment are granted as to Plaintiff's federal claims against all Defendants, which are dismissed with prejudice, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, which are dismissed without prejudice to be refiled in state court. The Clerk of Court is respectfully requested to enter judgment and terminate this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 27, 2019
      Brooklyn, New York